Township of Neshannock, : 
                      Appellant : 
                           : 
                           : 
              v. : 
                           : 
Kirila Contractors, Inc. and Fidelity : 
and Deposit Company of Maryland, : 
and Kirila Contractors, Inc., Hatch, : 
Mott MacDonald and Hatch Mott : 
MacDonald, LLC, and Hatch Mott : 
MacDonald T&T, Inc., both t/d/b/a :    No. 387 C.D. 2017
Hatch Mott MacDonald : 
                           : 
Township of Neshannock : 
                           : 
              v. : 
                           : 
Kirila Contractors, Inc. and : 
Fidelity and Deposit Company : 
of Maryland, :    No. 436 C.D. 2017
                  Appellants :    Argued: February 5, 2018

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                             FILED: March 5, 2018

        The Township of Neshannock (Township) appeals from the Lawrence County Common Pleas Court's February 28, 2017 interlocutory order (February 28, 2017 Order) denying in part the Township's Motion in Limine to Exclude Privileged Documents (Motion to Exclude). Kirila Contractors, Inc. (Kirila) and Fidelity and Deposit Company of Maryland (F&D) cross-appeal from the same order, which declared specified numbered exhibits inadmissible at trial because they were fully or partially privileged as attorney-client communications or attorney work product. There

are five issues before this Court: (1) whether the February 28, 2017 Order is an appealable order; (2) whether this Court may, by stipulation, consider deposition transcript excerpts and proposed exhibits on appeal despite that they were not before the trial court; (3) whether the Township waived the attorney-client privilege and attorney work product doctrine; (4) whether the trial court erred by ruling that certain exhibits were in whole or part protected by the attorney-client privilege and attorney work product doctrine; and (5) whether the Township should be precluded from filing any future interlocutory appeals pertaining to allegedly privileged evidence.

This appeal arises from a contract dispute between the Township, and Kirila and Kirila's surety insurer F&D relating to a Township sewer construction project. On April 8, 2011, the Township filed a breach of contract action against Kirila and F&D. The Township's contracted engineer Hatch Mott MacDonald and related companies (HMM) were named additional defendants. During discovery, the parties disputed the Township's withholding of documents based on the attorney-client privilege or attorney work product doctrine. On March 22, 2013, the Township filed a Motion for Protective Order. Kirila responded to the Motion for Protective Order and also filed a Motion for Appointment of Master Regarding Documents Asserted by [Township] to be Protected from Production (Motion for Appointment of a Master), wherein Kirila requested the appointment of a special master to conduct an *in camera* review of the disputed documents. The Township filed a brief opposing Kirila's Motion for Appointment of a Master, and a brief in support of its Motion for Protective Order. On September 18, 2013, the trial court denied the Township's Motion for Protective Order and granted Kirila's Motion for Appointment of a Master. Accordingly, by November 15, 2013 order (Master Order), the trial court appointed a special master (Master) to review the purportedly privileged documents and directed the Master to file a written report (Report) identifying the documents and portions

thereof subject to production, and those not subject thereto. The Master Order also declared that the parties had ten days to file written objections to the Report.

On February 13, 2015,[1] the Master filed his Report and notified the Township that it had thirty days to file exceptions.[2] The Report identified the documents which must be produced, and those which were privileged. The Report also explained:

> If no exceptions are filed to this [R]eport, and this [R]eport is confirmed by [the trial court], then the [d]iscovery [f]ile will be sent to counsel for [Kirila], it being noted that the [d]iscovery [f]ile contains all of the email communications, however the documents that have been protected will be removed from that file, and portions of the documents that have been determined to be protected will be deleted.

Reproduced Record (R.R.) at 618a. On February 23, 2015, Kirila filed objections to the Report. On March 4, 2015, the Township filed its objections. The Township challenged the Master's recommendation that the Township pay the entire Master's fee. The Township also disagreed with the Report, explaining:

> [T]he Township objects to the Report on the grounds that it does not provide the detail required by [the Master] Order. The [Master] Order specifically provided that the Master was to write a report containing the factual and legal reasons for his findings. Without this factual and legal reasoning, the Township cannot determine whether it has specific objections to any of the documents that he has determined are not privileged prior to their production to [Kirila]. **However, as this process has already delayed this case for**

---

[1] The Master filed an initial report on August 12, 2014. However, on August 14, 2014, the Township delivered another box of documents to the Master for his review. As a result, the Master rescinded his initial report on August 19, 2014. The Master's February 13, 2015 Report subsequently ratified the earlier August 12, 2014 report and the Master stated that he applied the August 12, 2014 report to the additional documents.

[2] Although the Master's Report used the term "exceptions," the Master Order and the parties' responsive documents used the term "objection." Reproduced Record at 618a, 576a, 621a, 644a. Notably, the thirty day period contradicts the Master Order which permitted the parties ten days to file objections.

3

**nearly one and a half years, the Township is not requesting that the Master submit a revised report. Rather, the Township is requesting that it reserve the right to object to the production of each of these documents on the grounds that they are privileged when and if they are introduced as an exhibit at any deposition or at the trial.**

R.R. at 647a-648a (emphasis added; citation omitted).

On May 22, 2015, the trial court issued an order (May 22, 2015 Order) that granted the Township's "request to reserve the right to object to the introduction of each document if the documents are produced at a deposition or at trial on the ground that they are privileged[,]" but overruled the Township's objections on all other grounds. R.R. at 722a. It also overruled Kirila's objections. Thereafter, **the Master delivered the documents he determined to be unprotected to Kirila**. **The Township did not appeal from the trial court's May 22, 2015 Order**.

Trial was scheduled for April 10, 2017. Kirila provided the Township a list of Kirila's proposed trial exhibits, including some of the documents the Master had reviewed. On September 27, 2016, the Township filed its Motion to Exclude, Kirila filed a response thereto, and the trial court held oral argument regarding the same on November 28, 2016. On February 28, 2017, the trial court granted the Township's Motion to Exclude in part and denied it in part. On March 29, 2017, the Township appealed to this Court pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 313,[3] and filed an Emergency Motion for Stay Pending Appeal.

---

[3] Rule 313 permits an appeal as of right from a lower court's collateral order. Discovery orders are generally reviewed for an abuse of discretion. However, the applicability of the attorney-client privilege and attorney work product doctrine involve questions of law. Thus, our standard of review is *de novo* and our scope of review is plenary. *See Levy v. Senate of Pa.*, 65 A.3d 361 (Pa. 2013).

4

On April 12, 2017, Kirila filed a Petition for Permission to File Cross Appeal in this Court.[4] On April 17, 2017, this Court transferred Kirila's Petition for Permission to File Cross Appeal to the trial court,[5] and directed the trial court to treat the petition as a cross-appeal from its February 28, 2017 Order. On May 31, 2017, this Court consolidated the matters and directed the parties to brief the appealability of the trial court's February 28, 2017 Order. On October 5, 2017, the parties filed a stipulation pursuant to Rule 1926 agreeing that certain deposition transcript excerpts and trial exhibits should be made part of the record on appeal.[6]

On November 9, 2017, this Court held a conference call regarding the parties' stipulation, and conditionally approved their stipulation subject to a Panel of Judges' determination of whether the Court may, by stipulation, consider the excerpts and proposed exhibits although they were not before the trial court.

First, we address the issues raised by this Court: (1) whether the February 28, 2017 Order is appealable; and, (2) whether this Court may, by stipulation, consider documents on appeal that were not part of the certified record. With respect to whether the February 28, 2017 Order is appealable, our Supreme Court has stated:

> Generally, subject to limited exceptions, litigants may appeal only final orders. One of the exceptions is the collateral order, which is addressed in [Rule 313]. Pa.R.A.P. 313. Rule 313 permits the immediate appeal as of right from an otherwise unappealable, interlocutory order provided that

---

[4] That matter was docketed at 436 C.D. 2017.

[5] This Court explained that cross-appeals are properly filed in the trial court.

[6] According to the Township:

> These deposition transcripts were not included in the reproduced record because they relate to an argument that Kirila [raised] for the first time in its Rule 1925(b) Statement. In order to fully address Kirila's arguments, the Township sought and obtained a stipulation to supplement the record with the materials necessary to adjudicate the issues at bar.

Township Second Br. at 13 n.5.

5

three requirements are met: '(1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that if review is postponed until after final judgment, the claim will be irreparably lost.' [*Commonwealth v.*] *Harris,* 32 A.3d [243,] 248 [(Pa. 2011)]; Pa.R.A.P. 313(b). **As we established in** ***Harris,* discovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313.**

*Commonwealth v. Flor*, 136 A.3d 150, 154-55 (Pa. 2016) (citation omitted; emphasis added). Here, because the February 28, 2017 Order purportedly directed the disclosure of allegedly privileged documents, it was immediately appealable under Rule 313.

We next address whether this Court may, by stipulation, consider deposition transcript excerpts and proposed exhibits that were not before the trial court. The law is well settled that an appellate court may not consider documents that are not part of the certified record. *See Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011). Rule 1926, upon which the parties rely, governs correction or modification of a record on appeal, and states:

> (a) If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth.
>
> (b) If anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, **the omission or misstatement may be corrected** by the following means:
>
> (1) by the trial court or the appellate court upon application or on its own initiative at any time; in the event of correction or modification by the trial court, that court shall direct that a supplemental record be certified and transmitted if necessary; or
>
> (2) **by the parties by stipulation filed in the trial court**, in which case, if the trial court clerk has already certified the

6

record, the parties shall file in the appellate court a copy of any stipulation filed pursuant to this rule, and the trial court clerk shall certify and transmit as a supplemental record the materials described in the stipulation.

(c) The trial court clerk shall transmit any supplemental record required by this rule within 14 days of the order or stipulation that requires it.

(d) All other questions as to the form and content of the record shall be presented to the appellate court.

> *Note:* The stipulation described in this rule need not be approved by the trial court or the appellate court, but both courts retain the authority to strike any stipulation that does not correct an omission or misstatement in the record.

Pa.R.A.P. 1926 (emphasis added). However, the parties do not assert that the record before this Court fails to reflect what occurred in the trial court, nor does it reference omissions or misstatements "by error, breakdown in processes . . . , or accident[,]" but rather, the parties are supplementing the record solely to assist this Court's analysis. *Id.* Accordingly, this Court may not consider on appeal the deposition transcript excerpts and exhibits that are not part of the certified record.[7]

Next, we consider the parties' arguments pertaining to the attorney-client privilege and attorney work product doctrine.

## Attorney-Client Privilege

> In both criminal and civil proceedings, the General Assembly has provided that 'counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon

---

[7] Further, even if the omissions occurred at the trial court level in this case, rather than correct the errors on appeal, the parties would have been required to notify the trial court clerk charged with transmitting a supplemental record. *See* Rule 1926(b).

7

the trial by the client.' 42 Pa.C.S. §§ 5916 (criminal matters) and 5928 (civil matters).

*In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 216 (Pa. 2014).

Our Supreme Court expounded:

> Generally, evidentiary privileges are not favored, as they operate in derogation of the search for truth. Nevertheless, the privileges exist where appropriate, and they serve important interests. Although the attorney-client privilege is deeply rooted in the common law, several statutes now define the parameters of such privileges in this Commonwealth.

*Id.* at 215 (citations and quotation marks omitted).

> The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client. The central principle is that a client may be reluctant to disclose to his lawyer all facts necessary to obtain informed legal advice, if the communication may later be exposed to public scrutiny. 'Recognizing that its purpose is to create an atmosphere that will encourage confidence and dialogue between attorney and client, the privilege is founded upon a policy extrinsic to the protection of the fact-finding process. The intended beneficiary of this policy is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication.' *Investigating Grand Jury of* [*Phila. Cty.*]*,* 593 A.2d [402,] 406 [(Pa. 1991)] (internal citations omitted).

*In re Thirty-Third,* 86 A.3d at 216-17 (citations omitted).

This Court, in *Dages v. Carbon County*, 44 A.3d 89 (Pa. Cmwlth. 2012), explained:

> Previously, the following four elements were required to establish the attorney-client privilege: **(1) that the asserted holder of the privilege is or sought to become a client; (2) that the person to whom the communication was made is a member of the bar of a court, or his or her subordinate; (3) that the communication relates to a fact of which the attorney was informed by the client, without the presence**

8

**of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter; and, (4) that the claimed privilege has not been waived by the client.** In *Gillard v. AIG Ins. Co.*, . . . 15 A.3d 44 ([Pa.] 2011), the Pennsylvania Supreme Court expanded the attorney-client privilege by broadly construing Section 5928 of the Judicial Code.[8] The [*Gillard*] Court held that 'in Pennsylvania, **the attorney-client privilege operates** in a two-way fashion **to protect** confidential client-to-attorney or *attorney-to-client* **communications made for the purpose of obtaining or providing professional legal advice**.' *Id.* . . . at 59 (emphasis added). Consequently, the privilege now also protects the confidential communications made by an attorney to his or her client.

*Dages*, 44 A.3d at 92-93 (citation omitted; bold emphasis added).

Moreover, it is clear that government entities may assert the privilege.

This Court has held that government entities qualify for the protection of the attorney-client privilege. **Such entities may claim the privilege for communications between their attorney and their agents or employees who are authorized to act on behalf of the entities.**

*Gould v. City of Aliquippa*, 750 A.2d 934, 937 (Pa. Cmwlth. 2000) (citation omitted; emphasis added).

"**The party asserting the privilege has the initial burden to prove that it is properly invoked**, and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege." *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001) (emphasis added). Our federal courts have held that "[t]**o sustain this burden of proof**, the party asserting the privilege **must show**, by record evidence such as affidavits, '**sufficient *facts* as to bring the [communications at issue] within the narrow confines of the privilege**.'"[9] *Delco*

---

[8] 42 Pa.C.S. § 5928.

[9] As noted by the U.S. District Court for the Northern District of New York:

9

*Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 688 (E.D. Pa. 1986) (bold emphasis added) (quoting *Barr Marine Prods. Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 636 (E.D. Pa. 1979)).[10] "[T]he attorney client-privilege must be asserted with respect to each question sought to be avoided or document sought to be withheld, 'rather than as a single, blanket assertion.' [*U.S. v.*] *Rockwell Int*['*l*]*,* 897 F.2d [1255,] 1265 [(3d. Cir. 1990).]" *Yang v. Reno*, 157 F.R.D. 625, 636 (M.D. Pa. 1994).

**Attorney Work Product Doctrine**

The attorney work product doctrine is set forth in Pennsylvania Rule of Civil Procedure (Civ. Rule) No. 4003.3, which provides:

> Subject to the provisions of [Civ.] Rule[] [Nos.] 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under [Civ.] Rule [No.] 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including

---

There is the general maxim that the public, particularly within the judicial forum, is entitled to be exposed to 'everyman's evidence.' 8 Wigmore, Evidence § 2317 (McNaughton rev. ed. 1961). The quest is for the truth of the matter to flow forward before the court, and '[t]he suppression of truth is a grievous necessity at best . . . [only justified] when the opposed private interest is supreme.' *In re Megan-Racine Assocs., Inc.*, 189 B.R. 562, 570 ([]N.D. N.Y. 1995) (quoting *McMann v. Sec. and Exch. Comm'n*, 87 F.2d 377, 378 (2d Cir. 1937)). But since the attorney-client privilege 'stands in derogation of the public's right to everyman's evidence, . . . **it ought to be strictly confined within the narrowest possible limits consistent with the logic of the principle.'** *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (citing [*U.S.*] *v. Int'l Bhd. of Teamsters*, 119 F.3d [210,] 214 [(2d Cir. 1997])).

*NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 125 n.21 (N.D. N.Y. 2007) (citations and quotation marks omitted; emphasis added).

[10] "The decisions of the federal district courts may offer guidance, but they are not binding precedent upon this Court." *Gould v. City of Aliquippa*, 750 A.2d 934, 938 (Pa. Cmwlth. 2000). However, this Court has looked to federal decisions for guidance in the context of discovery disputes. *See, e.g., Schenck v. Twp. of Ctr.*, 893 A.2d 849 (Pa. Cmwlth. 2006).

his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. No. 4003.3.

Our Supreme Court has opined:

Pennsylvania's [R]ules of [C]ivil [P]rocedure broadly provide that a 'party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.' Pa.R.C.P. [No.] 4003.1. Indeed, [Civ. Rule No.] 4003.3 furthers the liberal discovery rule, instructing that 'a party may obtain discovery of any matter discoverable under [Civ.] Rule [No.] 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney.' Pa.R.C.P. [No.] 4003.3. These provisions advance the truth-determining process so essential to our judicial system and prevent unfair surprise at trial.

*Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, 91 A.3d 680, 686 (Pa. 2014) (footnote omitted).

**Waiver**

Generally, "**once the attorney-client communications have been disclosed to a third party, the privilege is deemed waived**." *Joe*, 782 A.2d at 31 (emphasis added). Accordingly, "[a]bsence of waiver is one of the elements required to establish the privilege." *Bagwell v. Pa. Dep't of Educ. (Bagwell I),* 103 A.3d 409, 420 (Pa. Cmwlth. 2014). Courts have held that disclosure will not waive the privilege when an entity discloses privileged information to its employees intimately involved

11

with the matter, *i.e.* "individuals who had a 'need to know' the legal advice[.]" *Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 260 (E.D. Pa. 2008). "[W]hen waiver is the focus of a dispute, the burden is shifted to the party asserting waiver." *Bagwell I,* 103 A.3d at 420.

### Argument and Legal Analysis

Kirila contends that the Township waived all of its attorney-client privilege and attorney work product claims when it acceded in the Master delivering allegedly privileged documents to Kirila. Kirila also points to the Township's failure to appeal from the trial court's May 22, 2015 Order as waiver. It is undisputed that the Master forwarded the purportedly privileged documents to Kirila after the trial court entered the May 22, 2015 Order. The Township argues that it did not waive the privilege because the document disclosure was involuntarily compelled by the trial court's order.[11]

---

[11] The Township cites to several federal court cases to support its contention that production of documents under court order does not waive privilege. In *In re Vargas*, 723 F.2d 1461 (10th Cir. 1983), the 10th Circuit Court of Appeals held that "production of privileged documents by an attorney under court order does **not necessarily** constitute a waiver of the privilege." *Id.* at 1466 (emphasis added). Importantly, the *Vargas* Court specifically recognized that there was no right of appeal from the order requiring disclosure pursuant to a *subpoena duces tecum*. In *Transamerica Computer Co. v. International Business Machines* [*(IBM)*] *Corp.*, 573 F.2d 646 (9th Cir. 1978), the 9th Circuit addressed a waiver issue where a trial court issued a pretrial order which dramatically accelerated document production requiring IBM to produce 17 million documents within three months. Although IBM complied, incorporating intensive screening efforts, certain privileged documents were inadvertently produced. The *Transamerica* Court characterized the disclosures as compelled, given the accelerated discovery proceedings, and held that disclosure of documents compelled by court order does not waive the privilege. Notably, the order at issue is distinguishable from that in the instant matter, given that here, the Township requested the specific relief granted in the order, and no appeal was taken therefrom. *In re Engle Cases*, No.: 3:09-cv-10000-J-WGY-JBT, 2016 U.S. Dist. LEXIS 16667 (M.D. Fl. February 10, 2016) involved the disclosure of documents to a special master for inspection. The *Engle* Court held that disclosure of discovery for the purpose of determining the merits of privilege claim does not waive the privilege. The instant case does not pertain to whether disclosure to the Master waived the privilege, but rather, whether disclosure to Kirila did so. In *Miller*

Importantly, the Third Circuit Court of Appeals has held:

> [T]he work [] product doctrine protects an attorney's work from falling into the hands of an adversary, and so 'disclosure to a third party does not necessarily waive the protection of the work [] product doctrine.' [*Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991)]. Rather, the purpose behind the work [] product doctrine 'requires [a court] **to distinguish between disclosures to adversaries and disclosures to non-adversaries**[,]' *id.,* and it is **only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work [] product doctrine is waived.**

*In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (emphasis added); *see also Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296 (3d Cir. 1999). Further,

---

*v. Haulmark Transport Systems*, 104 F.R.D. 442, 445 (E.D. Pa. 1984) a witness produced a document at deposition, whereby an objection was made by one of the attorneys who wrote it. The witness did not testify about the contents thereof. The *Miller* Court concluded that the disclosure of the document at deposition over objection did not constitute a waiver of the privilege. In *Hynix Semiconductor Inc. v. Rambus Inc.* (N.D. Cal., No. CV-00-20905 RMW [Re Docket No. 3060], No. C-05-00334 RMW [Re Docket No. 1088], No. C-06-00244 RMW [Re Docket No. 713], filed Feb. 2, 2008), slip op. at ___, 2008 U.S. Dist. LEXIS 11764, at *17, the court explained: "In general, a disclosure compelled by a court order like the piercing orders in this case does not waive the attorney-client [privilege] and work product [doctrine]." *Id*. Importantly, the *Hynix* Court also emphasized that: "**The caveat to this general principle is that the party claiming privilege must take efforts 'reasonably designed' to protect the privilege.**" *Id*. at *17-18 (emphasis added). In *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228 (D. Md. 2005), the court endorsed the approach taken in *Transamerica*, and also recognized the need for a party claiming privilege to take reasonable measures to protect the privilege. In *Bowen v. Parking Authority of the City of Camden*, (D. N.J., No. 00-575, filed July 30, 2002), slip op. at __, 2002 U.S. Dist. LEXIS 14585, the court stated, "a production of documents ordered by a court does not constitute a waiver of attorney-client privilege because such production was not 'voluntary.'" *Id*. at __, *14-15 (quoting *Leonen v. Johns-Manville*, 135 F.R.D. 94 (D. N.J. 1990)). In *Leonen*, the court explained: "in the instant case, since defendant objected to the discovery and only produced the documents pursuant to a court order, defendant's disclosure cannot be considered voluntary." *Id*. at 99. Finally, in *Teachers Insurance & Annuity Association v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 641 (S.D. N.Y. 1981), the court held that "disclosure is not a waiver if it is compelled by court order, or made pursuant to a stipulation reserving the right to assert the privilege[.]" Although not explicitly overruled, the concept of limited waiver adopted in *Teachers Insurance* was abrogated in *In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir.1982), as recognized in *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258 (S.D. N.Y. 1995).

a party may waive the attorney work product [doctrine] by disclosing protected documents in certain circumstances. It has been held that a disclosure sufficient to waive the work product protection does not have to be intentional; therefore inadvertent or unintentional disclosures of protected materials also might result in the waiver of the privilege. However, such a disclosure does not automatically forfeit the attorney work product [doctrine]. **In determining whether a party has waived the privilege through an** inadvertent or **involuntary disclosure**, **courts consider, among other factors, the steps taken by a party to remedy the disclosure and any delay in doing so.** *See, e.g.,* [*U.S.*] *v. Keystone Sanitation Co.,* 885 F. Supp. 672, 676 (M.D. Pa. 1994); *cf.* [*U.S.*] *v. de la Jara,* 973 F.2d 746, 749–50 (9th Cir. 1992) (holding that a defendant waived his attorney-client privilege with regards to a seized letter because he waited six months after the seizure to assert his privilege). *But see Carter* [*v. Gibbs*]*,* 909 F.2d [1450,] 1451 [(Fed. Cir. 1990)] (holding that even an inadvertent disclosure automatically waives the attorney work product [doctrine], because to do otherwise 'would do no more than seal the bag from which the cat has already escaped.'). **Thus, in the case of** inadvertent or *involuntary* **disclosures**, **the party asserting the work product doctrine must pursue *all* reasonable means to restore the confidentiality of the materials and to prevent further disclosures within a reasonable period to continue to receive the protection of the privilege.**

*In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (citations omitted; bold and italic emphasis added).

In the instant matter, the Township's disclosure of the allegedly privileged documents to Kirila was not, as the Township argues, involuntary. The Report contained notice that the Master intended to deliver the unprotected documents to Kirila upon the trial court's disposition of any objections. Although the Township objected to the Report, it voiced no opposition to the disclosure and **acquiesced** in the disclosure of the documents to its adversary. Further, the Township informed the trial court that it was "**not requesting that the Master submit a revised report**[,"] but rather "the right to object to the production of each of these documents on the grounds

that they are privileged when and if they are introduced as an exhibit at any deposition or at the trial."[12]  R.R. at 647a-648a (emphasis added).  The trial court granted the Township's request and incorporated said request in its order.  Moreover, the Township did not appeal,[13] all the while knowing that its failure to do so would place the allegedly privileged material directly in its opponent's hands,[14] where that information ultimately remained for almost two years.[15]  These facts undermine the Township's argument that it was compelled to produce the documents, and clearly demonstrate that the Township did not "pursue all reasonable means" to prevent their disclosure.  *In re Grand Jury*, 138 F.3d at 981.

For these reasons, we hold that the Township waived privilege as to the contested documents disclosed to Kirila.  Despite the trial court's order permitting the Township to object to the use of the documents at deposition or trial on the basis of

---

[12] The Township explains in its brief to this Court that "[b]ecause the [] Master had provided no basis for his recommendations, the only way for the [t]rial [c]ourt to resolve the Township's [o]bjections would have been to conduct yet another cumbersome and time-consuming *in camera* review of the documents that the [] Master had recommended be produced to Kirila."  Township Second Br. at 12.

[13] As discussed, *supra*, the Pennsylvania Supreme Court has recognized the critical nature of appeals from orders that are alleged to violate a protected privilege, and expressed, unambiguously, that such appeals are permitted.  *See Flor*.

[14] The fact that the trial court granted the Township the objection right does not alter the fact that **the Township knowingly disclosed purportedly privileged documents to its adversary.**  The Township contends it, at all times, opposed disclosure by withholding the disputed documents, opposing the Master's appointment, and objecting to the Report.  However, in the end, the Township failed to prevent disclosure by taking action in opposing the Report, requesting the trial court to conduct its own *in camera* review and, if necessary, appealing from the trial court's order.  Instead, the Township requested disclosure in exchange for the right to object during deposition or at trial.  Moreover, the Township did not appeal from the trial court's May 22, 2015 Order.

[15] In *In re Grand Jury*, the Court concluded that **a four-month delay** in attempting to address the disclosure was too long, and resulted in privilege waiver.

15

privilege, once the Township disclosed the documents to Kirila, no such objection could be sustained since privilege had been waived.[16]

Having concluded that the Township waived the attorney-client privilege and attorney work product doctrine for all the documents the Master produced to Kirila, we need not address the parties' other issues pertaining to the disputed documents.

**Future Interlocutory Appeals**

Kirila urges this Court to enjoin the Township from filing any further appeals pursuant to Rule 313 or any other motion for a stay in the instant action based on privilege, because such an appeal would further interrupt or delay the trial. Kirila contends that it offered to agree to the entry of an order precluding the use at trial of documents determined by the trial court to be privileged, and documents for which the trial court reserved its decision, conditioned on the withdrawal of the instant appeal. Kirila notes that the Township offered no reason for its refusal to accept Kirila's offer and speculates as to the basis for the Township's refusal. Kirila is also concerned that the Township intends to further delay or interrupt the trial in this matter by filing Rule 313 appeals if the Township believes that the trial court has made erroneous admissibility rulings. Kirila provides no legal basis for preemptively prohibiting the Township from filing such appeals, and we will not attempt to predict the Township's

---

[16] Kirila also asserts that the Township waived privilege by the Township's inclusion of the disputed documents in the reproduced record it served on Kirila in this appeal. The Township contends that Kirila waived that argument because it was not contained in Kirila's Rule 1925(b) Statement or addressed by the trial court. We disagree. The Township filed its Designation of Contents of the Reproduced Record on June 23, 2017 and filed the reproduced record on July 25, 2017. Both filings occurred after Kirila filed its Rule 1925(b) Statement on May 31, 2017. Thus, at the time Kirila filed its 1925(b) Statement, it was unaware that the Township intended to again disclose the documents. The Township further argues that because the Master conducted an *in camera* document review, the documents had to be made a part of the sealed record on appeal. Because the Township did not appeal from the trial court's May 22, 2015 Order as well as failed to "pursue all reasonable means" to again prevent the document's disclosure, it waived the privileges; therefore, its argument is not compelling. *In re Grand Jury*, 138 F.3d at 981.

16

trial strategy or conduct, or presume that the Township will use the legal process to improperly delay trial. Thus, we deny Kirila's request to enjoin the Township from filing appeals pursuant to Rule 313.

## Conclusion

For all of the above reasons, we affirm in part and reverse in part the trial court's February 28, 2017 Order granting in part and denying in part the Township's Motion to Exclude. We reverse the trial court's February 28, 2017 Order to the extent that it held any documents or portions thereof were privileged and/or protected, because the Township waived those privileges and protections. The trial court's order is affirmed in all other respects.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Township of Neshannock, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Kirila Contractors, Inc. and Fidelity | : | |
| and Deposit Company of Maryland, | : | |
| and Kirila Contractors, Inc., Hatch, | : | |
| Mott MacDonald and Hatch Mott | : | |
| MacDonald, LLC, and Hatch Mott | : | |
| MacDonald T&T, Inc., both t/d/b/a | : | No. 387 C.D. 2017 |
| Hatch Mott MacDonald | : | |
| | : | |
| Township of Neshannock | : | |
| | : | |
| v. | : | |
| | : | |
| Kirila Contractors, Inc. and | : | |
| Fidelity and Deposit Company | : | |
| of Maryland, | : | No. 436 C.D. 2017 |
| Appellants | : | |

# O R D E R

AND NOW, this 5th day of March, 2018, the Lawrence County Common Pleas Court's (trial court) February 28, 2017 order is reversed in part and affirmed in part. The trial court's February 28, 2017 order is reversed to the extent that it ruled any documents or portions thereof were privileged and/or protected. The trial court's order is affirmed in all other respects.

_____
ANNE E. COVEY, Judge